UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61577-CIV-ALTONAGA/Simonton

**OCEAN'S 11 BAR & GRILL, INC.**,

      Plaintiff,

vs.

**INDEMNITY INSURANCE
CORPORATION RRG**, *et al.*,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Indemnity Insurance Corporation RRG's ("Indemnity['s]") Motion for Summary Judgment . . . ("Motion") [ECF No. 132], filed June 1, 2012. The Court has carefully considered the parties' written submissions,[1] the record, and the applicable law.

### I. BACKGROUND

Plaintiff, Ocean's 11 Bar & Grill, Inc. ("Plaintiff" or "Ocean's"), is a restaurant and bar located in Hallandale, Florida that has a twenty-four-hour liquor license issued by the State of Florida. (*See* Mot.[2] ¶¶ 9, 10). In November 2008, Plaintiff submitted an application for insurance to Indemnity, which sells insurance products to businesses in the hospitality and entertainment industries. (*See id.* ¶¶ 1, 13). Indemnity did not issue insurance coverage to Plaintiff at that time. (*See id.* ¶ 12).

---

[1] Only Plaintiff, Ocean's 11 Bar & Grill, Inc., responded to the Motion.

[2] Indemnity's Motion is comprised of both its statement of material facts and memorandum of law. (*See generally* Mot.). When citing to the Motion, the Court refers to Indemnity's statement of facts by paragraph number, and refers to Indemnity's legal arguments by page number. The Court also applies this formatting to Plaintiff's Response [ECF No. 147] and Indemnity's Reply [ECF No. 150].

In 2009, Plaintiff submitted another application for insurance to Indemnity, which was accepted. (*See id.* ¶ 18). Indemnity issued Plaintiff a general liability insurance policy, no. 6000115, which provided coverage from February 11, 2009 through February 11, 2010. (*See id.*). In subsequent years, Plaintiff submitted applications to Indemnity and successfully renewed its insurance coverage. (*See id.* ¶¶ 19, 21, 24, 26). All considered, Indemnity issued Plaintiff general liability insurance coverage from February 11, 2009 through February 11, 2012. (*See id.* ¶¶ 18, 21 (policy no. 6000890, covering from February 11, 2010 through February 11, 2011), ¶ 26 (policy no. 6001760, covering from February 11, 2011 through February 11, 2012)).

Several portions of the 2008 through 2011 applications are identical. (*See id.* ¶¶ 15, 19, 24). One such portion is Question #21 (*see, e.g.*, 2008 Nightclub Application, Ex. 4, at 61[3] [ECF No. 132-1]), which asks: "Does the applicant allow persons other than employees trained in their Formal Alcohol Awareness training program to serve alcohol to patrons? (i.e. Guest Bartenders, etc) ☐ Yes ☐ No — If yes, please explain[.]" (*Id.*). Another such portion is a signed statement[4]

---

[3] As multiple unpaginated exhibits have been docketed in single attachments, the Court employs the page numbering assigned by the Court's Electronic Filing System when citing to exhibits other than deposition transcripts.

[4] WARRANT: The undersigned represents and warrants, to the best of his/her knowledge and belief, based on reasonable inquiry, that the particulars and statements set forth on this application are true, correct and entirely complete, and there are no other risk factors that have not been disclosed herein. If any particulars or statements are materially misrepresented or material information has been omitted intentionally or accidentally, such misrepresentation or omission will void any issued coverages and the insurance company will have no duty to defend any claims, pay any damages, or pay sums or perform acts or services. The undersigned agrees and acknowledges that the particulars and statements set forth herein are material to the acceptance of the risk assumed by the insurance company and that the insurance company is relying upon the truth and completeness of the risk factors disclosed herein. It is agreed by the undersigned that this application, including any material submitted herewith, shall be the basis of the contract should a policy be issued, and this application shall be attached to and become a part of the policy. If the information in this application materially changes prior to the effective date of the policy, the applicant will notify the underwriter immediately in writing and the underwriter may modify or withdraw any outstanding quotation or proposal.

warranting that the truth of the information supplied by the applicant is "to the best of his/her knowledge and belief, [and] based on reasonable inquiry," and acknowledging that "[i]f any . . . statements are materially misrepresented or material information has been omitted intentionally or accidentally, such misrepresentation or omission will void any issued coverages . . . ." (*Id.* 63).

In each of its applications, Plaintiff responded to Question #21 by checking the "no" box. (*See* Mot. ¶¶ 12, 16, 19, 24). And except for the 2008 application, which was unsigned (*see* Nightclub Application, Ex. 4, at 63), David Reiter (Plaintiff's insurance agent) signed the name, "Joseph Franco" (owner of Ocean's), beneath each application's warranty statement. (*See* Mot. ¶¶ 15, 20, 25; Resp. ¶ 1; Franco Depo., Ex. 2, at 16:24–25, 17:1–7 [ECF No. 132-1]).

Neither Franco nor Reiter interpreted Question #21 to ask whether Ocean's used an independent vendor to provide alcohol training. (*See* Resp. ¶ 4). Specifically, Reiter thought the question was "directed to the internal training of Ocean's" (*id.* ¶ 1 (footnote omitted)), and that "using new-hire orientation and ongoing meetings [to supervise and train persons who served alcohol at Ocean's] complied with Question 21." (Reiter Depo., Ex. 3, 174:17–20 [ECF No. 132-1]; *see id.* 174:21–25; *see also* Resp. ¶ 3 (noting that instead of using an independent vendor to conduct any alcohol awareness training of its employees, Plaintiff offered "extensive" training "by a bartender with over twenty years of experience for several days, which is buffeted by monthly meetings")).

According to Indemnity, however, "Formal Alcohol Awareness training is a term of art that is universally understood within the insurance industry to mean [a] controlled educational course provided by a licensed instructor for responsible alcohol service." (Mot. ¶ 4). Examples

---

(Nightclub Application, Ex. 4, at 63 (capitalization of text omitted)).

of these courses include TIPS ("Training for Intervention Procedures"), TAM ("Techniques of Alcohol Management"), and ServSafe. (*See id.* ¶ 5). Whether an educational course such as TIPS, TAM, or ServSafe is used by an applicant directly influences Indemnity's decision to insure that applicant.[5] (*See id.* ¶ 6). Thus, Indemnity includes Question #21 in its applications for insurance coverage, which asks whether persons other than employees trained in the applicant's Formal Alcohol Awareness training program are allowed to serve alcohol to patrons. (*See id.*; *see also* 2008 Nightclub Application, Ex. 4, at 61). Plaintiff did not use a course such as TIPS, TAM, or ServSafe to train its employees until after April 30, 2011. (*See* Mot. ¶ 35; Resp. ¶ 3).

On April 30, 2011, an incident occurred at Ocean's prompting Indemnity to conduct an investigation of the surrounding circumstances. (*See* Mot. ¶ 29). As a part of its investigation, Indemnity asked Juan Marquez ("Marquez"), Plaintiff's shift manager, "Do any of the bartenders have alcohol awareness training?" (May 9, 2011 E-mail between Marquez & Indemnity, Ex. 15, at 63 [ECF No. 132-4]; Mot. ¶ 29). Marquez responded, "No." (*Id.* at 67; *see* Mot. ¶ 29). Marquez admits he does not know what is meant by the term "formal alcohol awareness training." (Marquez Depo., Ex. 4, at 17:3–5 [ECF No. 147-1]).[6]

On May 25, 2011, Indemnity issued a Notice of Rescission of Insurance Contracts . . . ("Rescission Notice"), which declared void *ab initio* each general liability insurance policy

---

[5] Plaintiff contests the contents of paragraph 6 of Indemnity's statement of material facts. (*See* Resp. ¶ 2). However, Plaintiff only cites to certain of Indemnity's underwriting guidelines in support, the location of which in the record has not been supplied to the Court. Indeed, Plaintiff indicates that the guidelines "are being filed under seal" (*id.* n.3), but a review of the docket as of July 5, 2012 shows no request to file any exhibit under seal. Thus, the Court considers the facts set forth in paragraph 6 of Indemnity's statement of material facts undisputed for purposes of this Motion. *See* FED. R. CIV. P. 56(e).

[6] Plaintiff represents in its statement of material facts that "Juan Marquez . . . did know what the term [Formal Alcohol Awareness training] meant." (Resp. ¶ 1). However, the deposition of Juan Marquez, to which Plaintiff cites, supports the contrary.

previously issued to Plaintiff.  (*See* Ex. 16, at 69–71 [ECF No. 132-4]).  Indemnity arrived at its decision, in part, because Plaintiff "withheld or misrepresented information concerning bartender and alcohol service operations."  (*Id.* 70 (footnote omitted)).

## II.  LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and alterations in original omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### III. ANALYSIS

The parties do not dispute the essential facts of the case. These include: (1) that Plaintiff did not use a controlled educational course provided by a licensed instructor for responsible alcohol service, such as TIPS, TAM, or ServSafe at any time prior to the submission of any of its applications for insurance; (2) Plaintiff provided its own alcohol awareness training to its employees in the form of new-hire orientation and ongoing meetings; and (3) Indemnity relied on the information provided by Plaintiff in Question #21 to assess the risk of insuring Ocean's.

Indemnity asserts that pursuant to both Florida law and the terms of Plaintiff's insurance applications, it appropriately rescinded its policies on the basis of a misstatement or omission in those applications. (*See* Mot. 14 (citing FLA. STAT. § 627.409[7]); *id.* 20 (citing to the terms of the applications' "warrant" section, which state that "[i]f any particulars or statements are materially misrepresented . . . , such misrepresentation or omission will void any issued coverages . . .")). Indemnity identifies Plaintiff's response to Question #21 — checking the "no" box — as the material representation justifying Indemnity's rescission. Specifically, according to Indemnity's interpretation of Question #21, it inquired whether Plaintiff's alcohol servers had undergone a

---

[7]   Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

  (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

  (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

FLA. STAT. § 627.409(1).

"controlled educational course provided by a licensed instructor for responsible alcohol service," such as TIPS, TAM, or ServSafe. (Mot. ¶ 4; *see id.* ¶ 5). Indemnity concludes, therefore, that as Plaintiff admits it did not use such a course prior to filling out any of the applications submitted to Indemnity, its response of "no" to Question #21 was a material misrepresentation.

Plaintiff maintains, however, that its answer to Question #21 was not a material misrepresentation.[8] Rather, Plaintiff interpreted the question to refer to its own training that it offered to its employees, and answered accordingly.[9]

The issue that remains, therefore, is whether Question #21 is susceptible to differing interpretations; i.e., whether it is ambiguous. Indeed, "[a]n insurer may not deny coverage under [Florida Statute section 627.409] . . . if the alleged misrepresentation was in response to an

---

[8] Plaintiff states that it "adopts and incorporates *all* of its legal arguments and exhibits [in its own motion for summary judgment [ECF No. 144]] into this Response as if fully restated herein." (Resp. 2 (emphasis added)). However, Plaintiff fails to identify how all of the arguments presented in its own summary judgment motion apply to the present Motion, and the Court will not make Plaintiff's arguments for it. Thus, except to the extent Plaintiff's statement of facts in its Response [ECF No. 147] refers to specific exhibits provided with Plaintiff's summary judgment motion, the Court does not look to any other filing beyond the Response for the content of Plaintiff's arguments in opposition to the present Motion. Accordingly, the Court also does not consider Indemnity's incorporation of its opposition to Plaintiff's summary judgment motion [ECF No. 149] in response to Plaintiff's wholesale incorporation of its summary judgment arguments (*see* Reply 5).

[9] Plaintiff also argues that under the applications' terms, where it warranted that its statements in the applications were "true, correct and entirely complete" to the "best of [its] knowledge and belief, based on reasonable inquiry" (Nightclub Application, Ex. 4, at 63 (capitalization omitted)), rescission pursuant to Florida Statute section 627.409 is only appropriate if Plaintiff intentionally submitted misrepresentations. (*See* Resp. 4–5 (citing, e.g., *Green v. Life & Health of Am.*, 704 So. 2d 1386 (Fla. 1998)). In *Green*, the insured's medical records showed he suffered from chronic renal failure, although the insured was unaware of his condition and indicated on his insurance application that he was not told within the past five years that he had "kidney failure." *Green*, 704 So. 2d at 1388. Indeed, the insured's physician did not tell the insured that he suffered from kidney failure. *See id.* The Florida Supreme Court held that the insurance company could not rescind the insured's policy under section 627.409. *See id.* at 1390. The court concluded that the statute "was never implicated" — the insured did not make any misstatements as his answers were to the best of his "knowledge and belief," as required by the insurance application. *Id.* at 1388, 1390.

*Green* is inapplicable here. The parties dispute the interpretation of Question #21, not Plaintiff's knowledge of the underlying facts at the time it completed the applications. Plaintiff admits it did not use a course such as TIPS, TAM, or ServSafe to train its alcohol-serving employees, and does not contend that it was unaware of the existence of such courses at the time it submitted its applications to Indemnity.

ambiguous question." *Mercury Ins. Co. v. Markham*, 36 So. 3d 730, 733 (Fla. 1st DCA 2010) (citing *Boca Raton Cmty. Hosp., Inc. v. Brucker*, 695 So. 2d 911, 913 (Fla. 4th DCA 1997); *Comprehensive Benefit Adm'rs, Inc. v. Nu-Cape Constr., Inc.*, 549 So. 2d 700 (Fla. 2d DCA 1989)).

"A question is ambiguous when it is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct." *Mercury Ins. Co.*, 36 So. 3d at 733 (citing *Comprehensive Benefit*, 549 So. 2d at 700; *Great Oaks Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 530 So. 2d 1053, 1055 (Fla. 4th DCA 1988)). "Ambiguities in an application for insurance are construed liberally in favor of the insured and strictly against the insurer who prepared the policy." *Graham v. Lloyd's Underwriters at London*, 964 So. 2d 269, 274 (Fla. 2d DCA 2007) (citing *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)); *see also Gaskins v. Gen. Ins. Co. of Fla.*, 397 So. 2d 729, 731 (Fla. 1st DCA 1981) ("Any ambiguity in the application is to be resolved against the insurer." (citing *Home Ins. Co. v. Drescher*, 210 So. 2d 451 (Fla. 3rd DCA 1968)); *Mercury Ins. Co.*, 36 So. 3d at 733 (citing *Gaskins*, 397 So. 2d at 731; *Comprehensive Benefit*, 549 So. 2d at 700).

Again, Question #21 asks: "Does the applicant allow persons other than employees trained in their Formal Alcohol Awareness training program to serve alcohol to patrons? (i.e. Guest Bartenders, etc)  ☐ Yes  ☐ No — If yes, please explain[.]" (2008 Nightclub Application, Ex. 4, at 61). Indemnity insists that the question can only be interpreted in one way, which is whether the applicant for insurance allows persons to serve alcohol other than employees who were trained in a controlled educational course provided by a licensed instructor for responsible alcohol service, such as TIPS, TAM, or ServSafe. Because an educational course provided by a

licensed instructor for responsible alcohol service is a type of "Formal Alcohol Awareness training program," Indemnity's interpretation of the question is certainly reasonable. Plaintiff does not suggest otherwise.

Whether Question #21 is susceptible to an alternate, reasonable interpretation rests on whether an "objectively reasonable [applicant] in [Plaintiff's] situation . . . could truthfully answer the question in either the affirmative or the negative." *Mercury Ins. Co.*, 36 So. 3d at 733 (citing *State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397 (Fla. 4th DCA 1996)). In *Mercury Insurance*, the court found that the trial court had erred in determining that a question on a car insurance application that used the word "modified" was ambiguous. *See id.* at 734. There, the insured had installed larger, wider tires and a lift-kit on a truck, yet answered "no" to the question: "Is any vehicle . . . modified . . . ?" *Id.* at 731. The insured testified that he thought "'modified' referred to engines and related parts," whereas the insurance company argued the question was unambiguous and that "the only reasonable interpretation of the word 'modified' is that it means *any change* to the vehicle." *Id.* at 732 (emphasis in original). In determining that the question was not ambiguous, the court examined whether an objectively reasonable person who had installed larger tires and a lift-kit on his truck, i.e., in the insured's situation, could truthfully answer the question as the insured had. *See id.* at 733.

Applying this standard here, the Court first turns to what "Plaintiff's situation" is. Indemnity suggests Plaintiff's situation is that of a restaurant and bar in need of general liability insurance, that had previously submitted applications for insurance to other companies and answered the questions as Plaintiff did.[10] Another fact defining Plaintiff's situation is that it

---

[10] Indemnity appears to add that Plaintiff's situation is one where its owner has twenty years of experience in the bar and restaurant business. (*See* Reply 6). This fact, however, was not supplied in either party's statement of facts, and thus the Court need not consider it. In any event, Indemnity fails to

9

never used a course such as TIPS, TAM, or ServSafe, but rather offered its own alcohol awareness training program. Thus, the relevant question before the Court is whether an objectively reasonable applicant in such a position could truthfully answer "no" to Question #21. For the following reasons, the Court answers this question affirmatively.

First, Indemnity argues that an applicant in Plaintiff's situation knew or should have known the meaning of "Formal Alcohol Awareness Program." Specifically, Indemnity contends that although the parties dispute Reiter's and Plaintiff's knowledge of the meaning of "Formal Alcohol Awareness Program," applications for insurance submitted by Plaintiff to other insurance companies demonstrate otherwise. (*Compare* Mot. ¶ 4 ("Formal Alcohol Awareness training is a term of art that is universally understood within the insurance industry to mean [a] controlled educational course provided by a licensed instructor for responsible alcohol service."), *with* Resp. ¶ 4 ("Neither Franco nor his insurance agent, David Reiter, interpreted question 21 to be asking whether Ocean's used an independent vendor to provide alcohol training." (footnotes and emphasis omitted)); *see* Mot. 18; ¶¶ 14 n.3, 23 n.4). For example, in a 2008 application for insurance that Plaintiff submitted to Sierra Underwriters, Plaintiff was asked: "Are Employees Given Liquor Training Yes____ No____ If "Yes", Explain Type and When Trained[.]" (Ex. 6, at 81 [ECF No. 132-1]). In a 2010 application that was not submitted to Indemnity, Plaintiff was asked: "Are all alcohol serving employees certified in a formal alcohol training course? ☐ Yes ☐ No  If yes, provide name of course (e.g., TIPS, TAM, RAMP, BEST, etc.)[.]" (Ex. 12, at 64 [ECF No. 132-3]). Plaintiff affirmatively answered both of these questions and added "TIPS" in response to the follow-up inquiries.

Notably, however, none of these questions uses the phrase "their Formal Alcohol

---

explain why a restaurant and bar owner of many years would interpret "their Formal Alcohol Awareness training program" consistent with Indemnity's position.

Awareness training program," nor does Indemnity explain why these questions compel the Court to conclude that an objectively reasonable applicant would know the definition of "their Formal Alcohol Awareness training program." Indeed, the 2008 application used the general term, "liquor training," and the 2010 application included the term "certified" and did not modify "formal alcohol training course" with "their." While Plaintiff does not contest the content of these applications, it is certainly arguable what they demonstrate. It is inappropriate for the Court to make such determinations in resolving a summary judgment motion, as the evaluation of such evidence, and hence the issue of Plaintiff's knowledge (and the knowledge of an objectively reasonable applicant in Plaintiff's situation), is for the trier of fact.

Thus, based on the present record and for the purposes of the Court's inquiry here, an objectively reasonable applicant in Plaintiff's situation would not necessarily know that the term "their Formal Alcohol Awareness training program" refers to a course such as TIPS, TAM, or ServSafe. The Court next turns to determine whether, given Question #21's plain meaning, an objectively reasonable applicant in Plaintiff's situation could truthfully answer the question as Plaintiff did.

First, the question refers to "*their* Formal Alcohol Awareness training program," meaning, the *applicant's* Formal Alcohol Awareness training program. This can reasonably be interpreted to mean a training program offered by the applicant — Plaintiff — itself, as opposed to a course provided by an independent licensed instructor. Second, the parenthetical explanation of "Guest Bartenders, etc[,]" underscores the question's focus on the *applicant's* alcohol awareness training program, as opposed to, for example, TIPS training that is completed elsewhere by guest bartenders. Third, although the words "formal," "alcohol," and "awareness" are capitalized, possibly indicating that "Formal Alcohol Awareness" is a term of art, the

11

insurance application fails to define it although it could easily have done so, and therefore "[t]he terms in an insurance policy must be 'given their everyday meaning and read in light of the skill and experience of ordinary people.'" *Watson v. Prudential Prop. & Cas. Ins. Co.*, 696 So. 2d 396 (Fla. 3d DCA 1997) (citations omitted)); *see id.* at 394, 396 n.3 That the adjective "formal" precedes the words "alcohol awareness training program" does not necessarily denote an established educational course such as TIPS. Rather, it could reasonably encompass an applicant's regular training program or regimen, as opposed to *ad hoc* or on-the-job training, based on the plain meaning of "formal." *See* AMERICAN HERITAGE DICTIONARY 535 (3d ed. 1997) (stating a definition of "formal" includes "[e]xecuted, carried out, or done in proper or regular form"); *see also Watson*, 696 So. 2d at 396 ("'In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries.'" (quoting *Brill v. Indianapolis Life Ins. Co.*, 784 F.2d 1511, 1513 (11th Cir. 1986))). According to this plain reading of the question, the Court concludes that an objectively reasonable applicant in Plaintiff's position could truthfully answer "no," as Plaintiff did, to Question #21 based on the formal alcohol awareness training program it offers to its employees.

Based on the differing reasonable interpretations of Question #21 and the issues of fact surrounding Plaintiff's knowledge, summary judgment is denied. *See Graham*, 964 So. 2d at 274–75 ("Where the terms of a contract are disputed and reasonably susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment." (citing *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005); *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001))).

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 132]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of July, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record